Good morning, Your Honors. May it please the Court, Jennifer Kuhn on behalf of Defendant Appellant Jesus Gallarzo, Jr. This case warrants dismissal because, as a result of both the government's outrageous misconduct and its lengthy pre-indictment delay, especially considered in combination with the discrepancies in the evidence at trial, casts serious doubt on the reliability of the evidence and the integrity of both the government's investigation and the resulting conviction. Turning first to the claim of outrageous government misconduct, I'd like to start by acknowledging that the standard for dismissal on this ground is high and that reversals on appeal on these grounds are rare. But nevertheless, each case must be considered on its own facts, and under the unique circumstances here, dismissal was warranted. How do you square your argument about misconduct with outrageous conduct with Simpson? That's a case where the FBI actually directed the informant to have sex with the suspect? Right. And manipulate the sexual relationship? Right, I understand. Here, as best I understand, the agents didn't even know there was a sexual relationship going on. That's correct. The agents stated there was no contrary evidence that the agents did not know of the sexual relationship at the time. However, the relationship, both sexual and emotional, was a two-year relationship, and it went beyond the intimacy of the relationship. The CI here was selling methamphetamine. She was using methamphetamine. She was using methamphetamine during sex with Mr. Galarzo. But, counsel, wasn't she lying to the police officers about that? She was, but nevertheless, I would submit that her misconduct was attributable to the government because there were so many red flags and such a lack of supervision of her contact by the government. She testified that the FBI was informed of her drug addiction and that, in fact, she had asked the FBI for help getting away from the temptation to use drugs, and that's at SCR 511 to 513. Los Angeles County Sheriff's Department Lieutenant Kevin Lloyd, who brought her as an informant to the FBI, testified that he openly discussed her problems with drugs with the FBI when he introduced them to her, and that was at ER 161 and 163. Her handler, FBI agent Glenn Hotema, said that he never asked her about her relationship with Mr. Galarzo, which you would think would be the most basic question. But once we have a case on the books that says it's okay for the police to actually encourage the informant to manipulate the sexual relationship, Simpson says that and says a lot of other things, like, you know, we really can't micromanage undercover agents. You know, they are in difficult situations. They have to make judgments about how to carry out their functions, you know, their safety and so on. And we, you know, we don't find outrageous. There's nothing outrageous about it. Now, if that's not outrageous, I don't see how this case can be. I think that's why it's important to also look at the other factors at play here, which were the lengthy delay in indicting the case, and then the important discrepancies that came out at trial that highlight how off supervision this informant was and how unreliable her evidence against Mr. Galarzo was. And just... But much of all those things hinge on a showing of prejudice. And I don't see how this sort of claimed misconduct really prejudiced your client or how the delay prejudiced your client. There's no showing of lost evidence or failed memories. You know, there's nothing. It's just a general allegation that two years is a long time. Well, it's true that trial counsel did not submit declarations, but he did proffer to the court that there was extensive telephonic and text communications between the CI. You say proffered. He stood up and said there is. And he wrote... Was there more than that? He said it, he wrote it in his motions, and he submitted... And what did he support it with? He submitted documentation that the phone carrier no longer preserved the text messages due to the delay, which wasn't disputed by the government. I think the problem he had was that... But you actually have to have something showing that the text message would have provided something that was exculpatory, that was lost. I mean, just the fact they don't have them doesn't mean that they would have helped. What was there to persuade the court that, wow, this is really important stuff? What story that they were supposed to have supported? Well, there was the CI's own testimony that she had sexually explicit messages and calls with Mr. Galarzo. There was also on the first monitor... Yes, but saying what? I mean, how would those things, had they existed, helped your client? You say, you know, there's got to be prejudice. I think the concern here is that there was manipulation of Mr. Galarzo, who, as we know from the pre-sentence report that the government submitted, was a special ed kid all through school. And we have an informant who is in extensive communication with him over a long period of time. The government is not monitoring those communications. It's not asking any questions about the relationship. And then when we're at trial, we learned that there's a possibility that there was an unauthorized stop on the way back from the transaction to the agents. There was an informant telling the government that she had a discussion where Mr. Galarzo asked her to photograph the drugs and she declined, which was not captured by the recording. There was an informant testimony that she turned over a stuffed animal that was supposed to be used to carry the drugs to the agents when they say no such stuffed animal was found. And we have a green agent who's basically on her first day on the job stating that she didn't document the search of the informant's vehicle, she couldn't recall the details of the search, that one of the recording devices malfunctioned, and that she didn't document that malfunction until years after the fact. So I think all... Those are all sound things that would have hurt the government, not the defendant. That would have hurt the government? Yeah. You know, sort of listing there for the stuff that would have helped your client. If the agent had been better at documenting things, it probably would have been worse for your client, you know, better for the government. So I don't see where the prejudice for your client is. I think it's because we don't know that this investigation, we can't trust the reliability and the integrity of this investigation. Why? What is it that we can't trust? I mean, what's the alternative story? That this informant manipulated Mr. Galarzo and that she possibly was involved in other activities even on the day of the transaction that were not captured by the recording. How does that exonerate your client? How would any of that have exonerated your client? Because we don't know even that the drugs that she turned over to the agent came from Mr. Galarzo. You know, you have one issue you raised with respect to all of this is whether it's outrageous government conduct. Whether there were other problems in the case really don't matter, doesn't matter. You know, the case Judge Kaczynski relies on is far worse than yours. I hope we don't have to rely on it. I'm not sure what we would do with that case if we had it to consider. But this isn't anywhere near that. Your only issue is was the government's conduct not only distasteful, but was it outrageous? And as you know, there are only two cases in which we've found outrageous conduct. This doesn't appear to be anywhere near the cases in which outrageous conduct has been found. Well, I disagree, Your Honor. And I would just ask you to consider the combination of all of these factors and the fact that the district court and this court plays an important role in ensuring the integrity of prosecutions and convictions. And I'll reserve the very little time I have left for rebuttal. Thank you. Good morning, Your Honors. Karen Escalante on behalf of the United States. I'd like to first address the pre-indictment delay issue. Judge Pragerson did not abuse his discretion in refusing to dismiss the indictment for pre-indictment delay because, as this panel has already noted, defendant failed to meet his burden of showing actual prejudice. There was no concrete evidence in the record that defendant had suffered any actual prejudice. Defendant failed to submit any sworn declarations. He failed to testify at an evidentiary hearing. He failed to present any evidence as to what exactly was the prejudice that he has suffered. In his papers, he asserted three categories of prejudice. The first was the loss of witnesses. The second was the loss of text messages and phone calls. And the third was the loss of the ability to seek a concurrent sentence. With respect to the loss of witnesses, government would like to point out to the panel that In a May 2015 letter, and this is in the record at ER 636, the government informed defense counsel of a confidential witness that had informed the government that the CI used to sleep with the defendant, that the CI slept with and did drugs with the defendant, and that the defendant had a serious girlfriend at that time. Thus, months before trial, defense counsel knew that there was at least one other witness to this relationship, yet defense counsel failed to pursue that lead. Instead, defense counsel simply asserted that witnesses could not be located. In making that assertion, he failed to identify, again, who the lost witnesses were, their identities, the number of such witnesses, or to explain their relationship. And as this panel has also pointed out, not only did defendant fail to identify who those witnesses were, but it also failed to identify what those witnesses would have said and how their testimony would have been exculpatory. In other words, helpful to this defendant's defense. With respect to the lost text messages, defendant who was a party to these exchanges could have submitted a declaration. He could have, he was a recipient witness to these exchanges, to these phone calls, to these text messages, but again, he submitted absolutely nothing, and it was his burden of showing what prejudice it was that he had suffered. As this Court's precedent makes clear, the mere absence of records is not enough to establish actual prejudice, and defendant needs to show how he was actually prejudiced, which this defendant did not do. Why don't you move on to the next issue? I'm sorry, Your Honor? Why don't you move on to the next issue? Yes. With respect to the outrageous government conduct issue, Your Honors. It's not model conduct, I assume. Pardon, Your Honor? I said it's not model or desirable conduct. No, it is not desirable conduct, Your Honor. That said, the government submits that this place, that this case is squarely controlled by Simpson, and that the conduct at issue here was not as shocking as the panel has already noted. Is that the best thing the government can say about its behavior in this case, that it's not as bad as Simpson? No, Your Honor. Ultimately, the government did not know that the C.I. was engaged in this sort of relationship with the defendant. Couldn't it know? It would have been nice to know, and it was less than ideal that the government did not know, Your Honor. But ultimately, what Simpson says is that it doesn't matter, even if the government had known. So long as the conduct is not attributable to the government, that what matters is what the government knew at the time. And if the government was not directing the C.I. to actually engage in intimate relations with the defendant, then that's not what rises to the level of outrageous government conduct. Is this the way you manage a confidential informant ordinarily? I would submit, Your Honor, that this is not the ideal way to manage a confidential informant in the ordinary course of business. It's not neither ideal nor customary, I hope. I would submit that it's not ideal, Your Honor. But it is customary? I don't – I can't speak to whether or not it is customary. I don't believe that it is customary, Your Honor. And don't you keep track of what your confidential informant is, what he or she's doing, whether he's engaged in drugs and is on a regular basis? In the ideal course of business, yes. No, don't tell me about ideal, because I doubt that you're frequently engaged only in ideal behavior. Let's bring it down a level to customary behavior. Do you keep track of whether your confidential informant is engaging in drugs, selling drugs on the side, what the relationship is with the person you're targeting? Yes, Your Honor. And in this case, there is – in the record, for instance, one can see that the FBI was constantly admonishing this particular confidential informant about behavior that she was supposed to be engaging in or not engaging in. The FBI was constantly admonishing the CI that she was not supposed to be engaging in otherwise illegal activities. And to get – the thrust of defendant's argument is essentially that the CI manipulated him into selling methamphetamine, but that's not what the record shows whatsoever. The record shows that defendant was excited about selling methamphetamine to the confidential informant, that he never showed any sort of hesitation. For instance, the transcript – and this is at ER 600, for instance – clearly shows that defendant was excited about the fact that he was selling the confidential informant a whole ounce. He constantly told her not to smash it because he wanted her buyer to see how good it looked. Defendant told the CI, I want him to see it so he can buy another one. I want him to get it like this so he can buy another one. There is – under these circumstances, there's nothing in the record to suggest that the confidential informant manipulated the defendant to sell him the drugs. And one final point. The defendant takes the position that he was at one point – and this is not entirely clear from the record – that he may have been in special ed classes. That said, in his jail phone calls that the government obtained, you know, when it was in his interest, he was a smart criminal, and he embraced his role as a criminal at one point, telling his girlfriend, I'm not a expletive criminal for nothing. Unless the Court has further questions, the government would submit. Thank you, Counsel. Counsel, I may as well, Your Honor, thank you for your time. Thank you, Counsel. Thank you both. The case is targeted and submitted.
judges: Reinhardt, Kozinski, Christen